In the Matter of the Application of WILLIAM F. SAUSBIER, SAMUEL T. HUDSON and JAMES CONNELLY, Petitioners, for a Certiorari Order against FRED WHEELER, Mayor of the City of Hudson, Defendant.

Third Department, October 27, 1937.

*Coffin, Coffin & Inman* [*Samuel B. Coffin* of counsel], for the petitioners.

*R. Monell Herzberg, Corporation Counsel,* for the respondent.

HEFFERNAN, J. In this proceeding the court is called upon to review the action of the respondent, the mayor of the city of Hudson, in removing petitioners from their offices as commissioners of public safety of that city.

The Charter of the City of Hudson (Laws of 1921, chap. 669) makes provision for a commission of public safety, to be a body corporate, with power to sue and defend in all courts, and authorizes the mayor to appoint the members thereof, consisting of three, each of whom shall hold office for a period of three years. Heretofore petitioners were duly designated by the mayor to constitute such commission. Section 30 of the charter clothes the mayor with the power of removal in the following language: " The mayor may

remove any officer appointed by the mayor for a term fixed by this act or to fill a vacancy, within the term for which such officer shall have been appointed, for incompetency or·malconduct in office, after giving to such officer a copy of the charges against him and opportunity to be heard in his defense in person and by counsel."

The charter confers upon the commission of public safety power to appoint and remove the members of the police and fire departments of the city and to make rules and regulations for the government and discipline of such officials.

The mayor is the chief executive officer of the city and as such is charged with the duty of enforcing the law of the State within the municipality and also with the enforcement of the ordinances, rules and regulations of the common council and of the various boards and commissions. With certain exceptions not material here the mayor is authorized to veto any ordinance or resolution of the common council or of any board or commission, including the commission of public safety. Upon the disapproval of the mayor of any measure which he is authorized to veto it shall have no effect unless upon reconsideration by the body which adopted it two-thirds of the members thereof shall vote for its passage, in which event it shall become effective. The charter also provides that the mayor " shall have the power to call out and command the police and firemen, whenever in his discretion he shall deem necessary, and on such occasions to summarily remove or suspend any policeman or fireman for insubordination or neglect of duty."

For several weeks prior to March 31, 1937, there were industrial disputes between the employer and the employees in one of the factories in Hudson. A picket line, consisting of about forty persons, was established in the vicinity. Traffic was more or less obstructed, particularly while employees of the factory were entering or leaving their employment.

On March 31, 1937, petitioners issued an order in writing to the police department of the city requiring that department to limit the number of pickets at the factory to three at each entrance while employees were entering or leaving such factory. On the day of its issuance the respondent directed the police officers to disregard the order of the petitioners. Later in the day, after their order was countermanded, petitioners adopted a resolution censuring respondent and caused it to be published in a local paper the following morning. The resolution reads: " At a conference of the Public Safety Commission it was unanimously voted to censure Mayor Fred Wheeler for his action taken this afternoon in canceling our orders to the police department. We, the Commissioners of Public Safety, feel it is our duty to give the citizens of Hudson protection of persons and property."

After the publication of the resolution on April first, respondent on the same day caused to be served upon petitioners a notice charging them with malconduct solely on the ground that they voted to adopt such a resolution, and requiring them to appear before himself on the following day to answer such charge. Petitioners and their counsel appeared at the time appointed, filed an answer and moved to dismiss the charge on the ground that it did not state facts constituting incompetency or malconduct in office. Respondent denied the motion. Petitioners then asked for an adjournment and that application was likewise denied, after which they and their counsel withdrew from the hearing. Proof was then made of the fact that petitioners did adopt the resolution of censure. No proof was offered, and there is no claim made before us, that petitioners were guilty of any other acts which might be deemed to constitute either incompetency or malconduct. At the conclusion of the hearing respondent made a decision in writing finding that petitioners adopted and caused to be published the resolution in question. From respondent's decision we quote:

" I also find that such statement at the time it was issued constituted malconduct in office in that it purported to censure me for an act which I was legally entitled to do and in doing which I was within my legal rights. * * *

" I, therefore, find that William Sausbier, Samuel T. Hudson and James Connelly are, and each of them is, guilty of malconduct in the office of Commissioners of Public Safety of the City of Hudson, New York."

The decision concludes by removing petitioners from office for the reasons stated.

The law relating to removals from office is drastic and highly penal and must be given a strict construction. The primary purpose of a removal statute is the protection of public interests. Those interests are not imperiled by acts of a trifling or unimportant character. The peril arises when the incumbent's administration of the office is marked by such grave misconduct or such flagrant incompetency as demonstrates his unfitness for the position.

There can be no condonement of willful misconduct or corruption in office. Corrupt, incapable and unworthy officials should not be tolerated in the public service. There must, however, be a willful intent to do wrong or a maladministration of office to warrant the summary removal of a public officer. An officer may be ousted when he acts willfully and violates a statute or a duty imposed " with a bad or evil purpose, contrary to known duty." (*State* v. *Roth*, 162 Iowa, 638; 144 N. W. 339.)

In the leading case of *Rex* v. *Richardson* (1 Burr. 517) Lord MANSFIELD classified the offenses which justify the power of removal and his judgment in that respect has been followed in England and generally in this country. According to him there are three sorts of offenses which would warrant the discharge of an officer: (1) Such as have no immediate relation to his office, but are themselves of so infamous a nature as to render the offender unfit to execute any public franchise. (2) Such as are only against his oath and the duty of his office as a corporator, and amount to breaches of the tacit condition annexed to his franchise or office. (3) Offenses of a mixed nature, as being an offense not only against the duty of his office, but also a matter indictable at the common law.

As we have already shown, respondent's power of removal of an officer is limited to two grounds, " incompetency or malconduct in office." When the terms under which the power of amotion is to be exercised are prescribed, they must be pursued with strictness. (2 Dillon on Municipal Corporations [5th ed.], § 468.)

The single question presented to us is whether the charge made against petitioners is sufficient in law to constitute a cause for removal.

We recognize the rule that in a proceeding of this nature the only question of judicial cognizance is as to whether the removing officer has kept within his jurisdiction and whether the cause assigned is cause for removal under the statute. If respondent has not exceeded his jurisdiction and if there is any substantial basis for his action it ought not to be disturbed. To apply any other rule to the proceedings of municipal bodies would be impracticable and disastrous in the extreme to public interests. (*State ex rel. Hart* v. *Duluth*, 53 Minn. 238; 55 N. W. 118.)

The cause assigned for removal must not be a mere whim or subterfuge, but must be of substance relating to the character, neglect of duty, or fitness of the person removed to properly discharge the duties of his position. (*People ex rel. Van Tine* v. *Purdy*, 221 N. Y. 396.)

The power of removal being designed to insure efficiency and fidelity in the discharge of official duty the degree of incompetency or malconduct which amounts to sufficient cause for removal must of necessity, within certain established limits, rest somewhat in the sound discretion in the officer in whom the power of removal is vested.

" Cause " or " sufficient cause " means legal cause and not any cause which the officer authorized to make such removal may deem sufficient. It is implied that an officer cannot be removed at the mere will of the official vested with the power of removal, or without

any cause. The cause must be one which specifically relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public. The cause must be one touching the qualifications of the officer or his performance of his duties, showing that he is not a fit or proper person to hold the office. An attempt to remove an officer for any cause not affecting his competency or fitness would be an excess of power and equivalent to an arbitrary removal. (*Bagg's Case*, 11 Coke, 93; *State ex rel. Haight* v. *Love*, 39 N. J. Law, 14; *State* v. *McGarry*, 21 Wis. 496; *State ex rel. Hart* v. *Duluth, supra:* 19 R. C. L. 934; 43 C. J. 658.)

The sufficiency and reasonableness of the cause of removal are questions for the courts (2 Dillon on Municipal Corporations [5th ed.], § 476.) This has been the accepted law ever since *Bagg's Case* (*supra*), and we are not aware of any respectable authority to the contrary. (*State ex rel. Hart* v. *Duluth, supra.*)

Upon examination of the charge in this case we are clearly of the opinion that it is insufficient in law to sustain the order of removal. As commissioners of public safety these petitioners had no authority to commend or condemn, to praise or blame the mayor. When they assumed to censure him they were not acting as public officials but as private citizens. No contention is made that their censure resulted in any disturbance or created any condition detrimental to the public interests. For the purposes of this discussion we shall assume that respondent had sufficient reason for countermanding the order of petitioners. We shall likewise assume that an emergency existed which justified him in taking command of the police. Undoubtedly respondent was piqued because of the publication of the ill-advised resolution of censure. None of these reasons, however, justifies his procedure or furnishes any reasonable basis for his order of removal. The ground on which the determination is based is frivolous and legally insufficient. From the record before us we are convinced that there is an utter failure to establish incompetency or malconduct upon the part of the petitioners. It is not yet the law of the land that criticism of a public official constitutes either incompetency or malconduct.

Incompetency as a ground for suspension and removal of a public officer has reference to any physical, moral or intellectual quality, the lack of which incapacitates one to perform the duties of his office. (*State ex rel. Hardie* v. *Coleman*, 115 Fla. 119; 155 So. 129.)

Malconduct means ill conduct; especially, dishonest conduct; maladministration; as applied to officers, official misconduct. (38 C. J. 343.)

" ' Malconduct ' means essentially the same thing as ' actual fraud and wickedness,' though it is a less strong term * * *.

" The word ' malconduct ' in Galveston City Charter, § 156, giving the city counsel power to remove any officers for incompetency, malfeasance, or nonfeasance in office, means malconduct in office. ' Malconduct,' as used, means misconduct, and the offense is official misconduct." (Words and Phrases, First Series.)

"An officer who violates his public obligation, and betrays his trust by selling his official influence or vote, is guilty of ' malconduct ' in office." (Words and Phrases, Second Series.)

" Malconduct — Ill conduct; esp., dishonest conduct; maladministration." (Webster's New International Dictionary [2d ed.].)

The determination of respondent is annulled on the law and facts, with fifty dollars costs and disbursements, and petitioners are reinstated as commissioners of public safety.

RHODES, CRAPSER and BLISS, JJ., concur; HILL, P. J., dissents.

Determination annulled, with fifty dollars costs and disbursements, and petitioners reinstated as commissioners of public safety.