24 N.Y.2d 528 (1969)
Louis L. Friedman, Respondent,
v.
State of New York, Appellant. (Claim No. 44913.)
Court of Appeals of the State of New York.
Argued January 23, 1969.
Decided April 23, 1969.
Louis J. Lefkowitz, Attorney-General (Jeremiah Jochnowitz and Ruth Kessler Toch of counsel), for appellant.
John T. DeGraff, Theodore Kiendl, Richard E. Nolan and James W. B. Benkard for respondent.
Chief Judge FULD and Judges BERGAN, KEATING, BREITEL and JASEN concur with Judge SCILEPPI; Judge BURKE dissents and votes to affirm in a separate opinion.
*531 SCILEPPI, J.
In 1956 claimant, Louis Friedman, was elected to the office of Supreme Court Justice for a term expiring on December 31, 1970. On July 2, 1962 the Presiding Justice of the Appellate Division, Second Department, pursuant to the State Constitution (art. VI, § 9-a [now § 22]), requested the then Chief Judge of the Court of Appeals to convene the Court on the Judiciary to consider matters involving the conduct of the claimant disclosed in a report of a Justice of the Supreme Court filed in the Appellate Division, Second Department, in a disciplinary proceeding entitled Matter of M. Malcolm Friedman (see 17 A D 2d 644) brought against claimant's brother.
On August 15, 1962 the Court on the Judiciary[1] determined *532 preliminarily that sufficient cause existed for preferring charges and accordingly, based on the conduct disclosed in the above-mentioned report, the following charges were served on August 16, 1962: "That Louis L. Friedman has abused his public office as a Justice of the Supreme Court of the State of New York, Second Judicial District (1) by interfering with and obstructing a Judicial Inquiry and Investigation ordered by the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, on the 21st day of January 1957; (2) by engaging in unethical and improper conduct in that, while a Justice of the Supreme Court, he maintained in his judicial chambers exclusive custody, control and management of the moneys, accounts, books and financial records of the firms of Friedman and Friedman and M. Malcolm Friedman without properly preserving or accounting therefor and, moreover, would not surrender the same to M. Malcolm Friedman despite reasonable and proper demands therefor; (3) by violating and failing to observe the concept, spirit and letter of the canons of judicial ethics, and by causing M. Malcolm Friedman to violate and to fail to observe the canons of professional ethics."
Trial was scheduled for October 19, 1962 but was adjourned, without date, to give counsel an opportunity to agree on a stipulated record. Claimant's counsel objected to incorporating into the record evidence about two matters relating to claimant's alleged practice of law in violation of the State Constitution and claimant's alleged violation of the State and Federal Income Tax Laws. Objection was made on the ground that the evidence related to matters which had never been charged, and as to which neither claimant nor various State officers had ever been given any notice. On December 10, 1962 the Court on the Judiciary considered the objection, overruled it and declared that the evidence would be received.
The trial was held in January and February, 1963. On February 26, 1963 the court handed down its decision dated February 22, 1963 holding that the charges had been sustained and, therefore, claimant should be removed from his office as Justice of the Supreme Court.
Claimant subsequently presented to the court his petition and a proposed order to show cause to vacate the decision of the court on the grounds (1) that two of the members of the court *533 were not present when the court was convened on August 15, 1962 and that, therefore, the Court on the Judiciary was never properly composed; (2) that proper notice of all the charges within 60 days before the trial was not given to the Governor of the State of New York, the President of the Senate, the Temporary President of the Senate, and the Speaker of the Assembly; and (3) that the proceedings contravened the due process provision of the Fourteenth Amendment to the United States Constitution.
In essence, claimant contended that the court had been without jurisdiction to proceed with the matter. Treating the proposed show cause order as a motion to vacate its determination, the court denied the motion, holding that it had been properly convened and had complied with the procedural requirements of the State Constitution.
Thereafter claimant made several abortive attempts to obtain an adjudication that his removal by the Court on the Judiciary was void. He filed a notice of appeal to the Appellate Division, Third Department, from the decision of the Court on the Judiciary. In addition, he sought review there by way of article 78. Both the appeal and the article 78 proceeding were dismissed on the ground that the Appellate Division lacked jurisdiction to directly or collaterally review the jurisdiction of the Court on the Judiciary (Matter of Friedman, 19 A D 2d 120).
Claimant also appealed to the United States Supreme Court from the determination of the Court on the Judiciary claiming Federal constitutional violations. The Supreme Court dismissed (one Justice dissenting) holding that no substantial Federal question was presented (375 U. S. 10).
An article 78 proceeding instituted against the New York City Comptroller in the Supreme Court, New York County, to compel payment of the city's share of the salary that claimant alleges is owed to him was also dismissed on the ground that "the relief sought in the petition is not available in a proceeding under article 78 of the Civil Practice Act" (Matter of Friedman v. Beame, N. Y. L. J., Nov. 4, 1963, p. 14, col. 7). On appeal the Appellate Division, First Department, affirmed (20 A D 2d 969).
The instant action was brought in the Court of Claims to recover that portion of claimant's salary payable by the State from the date of his removal to the date of the filing of the claim, *534 February 18, 1965, alleging that claimant was never legally removed from his elected office and was, therefore, entitled to the salary accrued and would continue to be entitled to salary until the expiration of his term of office on December 31, 1970. The State moved to dismiss his claim on the grounds that the Court of Claims lacked jurisdiction of the subject matter of the claim and that the claim failed to state a cause of action. The Court of Claims, in granting the motion to dismiss, did so on the ground that the claim was barred by res judicata since the Court on the Judiciary had ruled adversely to the claimant on the issue of its own jurisdiction to remove him and that determination could not be collaterally attacked. The Appellate Division, Third Department, reversed in an opinion by STALEY, J., and held that, since claimant's collateral attack was directed, not at factual issues previously litigated, but at the legal conclusion of the Court on the Judiciary as to its own jurisdiction to remove claimant, the determination of the jurisdictional issue by the Court on the Judiciary was not res judicata and did not preclude the claimant from attacking the validity of that determination in his present action. Justice GIBSON dissented in a memorandum and voted to affirm on the ground that it "is unthinkable * * * that the claimant should be entitled to recover salary allocable to the office from which he was thus removed, and to which he cannot be restored, for services that he did not perform and could not have lawfully performed". The Appellate Division granted leave to appeal to this court and certified three questions: (1) Was the Appellate Division correct in reversing the order and judgment of the Court of Claims for the reason that the judgment of the Court on the Judiciary was not res judicata as to the present claim? (2) Does the Court of Claims have jurisdiction of the subject matter of the claim? (3) Does the claim state a cause of action? For the reasons which follow, it is concluded that questions one and two should be answered in the affirmative and question three in the negative.
In this case, we are concerned with the "estoppel" aspect of the doctrine of res judicata by which "Any right, fact, or matter in issue, and directly adjudicated on, or necessarily involved in, the determination of an action before a competent court in which a judgment or decree is rendered on the merits *535 is conclusively settled by the judgment therein and cannot again be litigated between the parties and privies whether or not the claim or demand, purpose, or subject matter of the two suits is the same" (50 C. J. S., Judgments, § 592, p. 11). Simply put, under the doctrine of res judicata a matter once judicially decided is finally decided; therefore, a litigant will not be heard to attack collaterally a matter which was or could have been determined in the prior litigation. Orderly procedure and repose in litigation demand that available methods of direct review be used as a vehicle for the correction of alleged errors.
In holding that claimant was prevented by the doctrine of res judicata from collaterally attacking his removal, the Court of Claims in pertinent part said:
"Issues of jurisdiction may be, as any other matter, the subject of res judicata. (United States v. Eastport S. S. Corp., 255 F.2d 795 [2d Cir., 1958].) A court has the authority to pass upon its own jurisdiction, and its determination sustaining jurisdiction against attack, while open to direct review, is res judicata in a collateral action. (Chicot County Dist. v. Bank, 308 U. S. 371 [1940].) Claimant here raised the question of jurisdiction in the proceedings before the Court on the Judiciary, and the issue was determined adversely to him. * * *
"The doctrine of res judicata is not restricted to factual determinations. It is equally applicable to questions of jurisdiction over the subject matter and to issues of law. (Stoll v. Gottlieb, 305 U. S. 165 [1938].) * * *
"If the Court on the Judiciary exceeded the jurisdiction conferred upon it under article VI of the New York State Constitution, claimant's remedy was by direct review." (Friedman v. State of New York, 53 Misc 2d 455, 457-458.)
In our opinion this determination was erroneous.
Inherent in the lower court's reasoning is the assumption that claimant could have directly attacked his removal by way of appeal. There is, however, no basis or authority for this view. There is no inherent right to appeal a court's determination. The right to appeal depends upon express constitutional or statutory authorization. Section 9-a (now § 22) of article VI of the State Constitution, under which claimant was removed, establishes the Court on the Judiciary and sets forth its powers and certain procedures to be followed in removal proceedings, *536 but nowhere in that section is a right of appeal provided for and no general constitutional or statutory provision exists for an appeal from the Court on the Judiciary. Nor can it be said that the right to appeal is inherent in the concept of due process. Thus, while the Court of Claims was of the opinion that claimant should have appealed from the determination of the Court on the Judiciary, it failed to take cognizance of the fact that as a matter of law claimant could not take an appeal.
Nor do we think that the Court of Claims was correct in stating broadly that a court's determination sustaining jurisdiction against attack is res judicata in a collateral action. This is true only in a case where jurisdiction depends on a fact that is litigated in a suit and is adjudged in favor of the party who avers jurisdiction. Where, however, as in this case, a court's determination as to subject-matter jurisdiction is a mere legal conclusion, the want of jurisdiction to render the particular judgment may always be asserted and raised directly or collaterally.
As this court long ago said in O'Donoghue v. Boies (159 N.Y. 87, 100): "It is obvious that, under any other rule, a court could acquire jurisdiction of the person or the subject-matter by the mere assertion of it, or by an erroneous decision upon the law that it has it in any particular case" (see, also, Restatement, Judgments, §§ 8, 11).
The rule applicable here was perhaps best stated by this court in Matter of Baltimore Mail S. S. Co. v. Fawcett (269 N.Y. 379, 388): "A court without jurisdiction of the subject-matter of an action can acquire no jurisdiction by erroneous decision that it has jurisdiction * * * A judgment thereafter rendered by default is void * * * and a defendant may raise and reiterate the objection of want of jurisdiction at any stage."
It is, therefore, clear that claimant is not prevented by the doctrine of res judicata from asserting the instant claim. Under the applicable statutes, the State is liable for the payment of a portion of the salary of the office from which claimant contends he was illegally removed. It necessarily follows that the Court of Claims had jurisdiction of the subject matter of the action, since that court, in fact, is the only forum in which the State has consented to be sued. Accordingly, the first two questions *537 certified by the Appellate Division should be answered in the affirmative.
The third question  Does the complaint state a cause of action?  necessarily raises the question of the legality of claimant's removal for, if the removal was valid, the claim must be dismissed.[2]
Claimant's attack on the removal is threefold. Initially he contends that the removal was a nullity because the failure to follow prescribed constitutional procedures with respect to the organization of the Court on the Judiciary and with respect to giving claimant and specified State officers timely notice of the charges deprived the court of subject-matter jurisdiction. Suffice it to say that we have carefully considered each of the alleged irregularities and find no merit to claimant's contention. The procedural defects, if any, relied upon by claimant do not reach jurisdictional dimensions and in no way deprived him of a fair trial.
Relying on the sweeping language contained in Matter of Murchison (349 U. S. 133), claimant next contends that he was denied due process of law under the Fourteenth Amendment to the United States Constitution because the Court on the Judiciary acted as complainant, prosecutor and Judge. Additionally, he contends that the removal section of the State Constitution (art. VI, § 22, formerly § 9-a) which authorizes a removal "for cause", without providing any standards to define the meaning of the term, is vague and indefinite and, therefore, violates the United States Constitution.
These contentions cannot serve as a basis for claimant's action, and in our opinion are without merit.
As noted earlier, the doctrine of res judicata does not estop claimant from collaterally attacking the subject-matter jurisdiction of the Court on the Judiciary because there was no available *538 means of appeal to review that question and because the court's determination as to its jurisdiction was a mere legal conclusion, not based upon any litigated fact. That holding, however, is limited solely to claimant's contentions that the Court on the Judiciary did not comply with the mandates of the State Constitution. The contentions presently under discussion, however, are concerned only with Federal constitutional violations. With respect to these contentions, claimant had available  and took  a direct appeal from the determination of the Court on the Judiciary to the United States Supreme Court. That appeal was dismissed for "want of a substantial federal question" (375 U. S. 10).
Claimant contends that since the appeal was met with a motion to dismiss or affirm, and since the Supreme Court did not affirm, but dismissed the appeal, this was not a decision on the merits, but only a refusal to take appellate jurisdiction, and is not a bar to the present action.
The efficacy of this argument would be apparent if the instant case involved a denial of certiorari rather than a dismissal of an appeal. The Supreme Court has frequently said that "The denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times" (United States v. Carver, 260 U. S. 482, 490; see, also, Stern and Gressman, Supreme Court Practice [3d ed.], § 5-7, p. 179). This is not true, however, where the Supreme Court dismisses an appeal from a State court "for want of a substantial federal question". As Messrs. Stern and Gressman state in their treatise on Supreme Court Practice (§ 5-18, pp. 195-196):
"When the Court feels that the decision below is correct and that no substantial question on the merits has been raised, it will affirm an appeal from a federal court, but will dismiss an appeal from a state court `for want of a substantial federal question.' Only history would seem to justify this distinction; it would appear more sensible to affirm appeals from both state and federal courts when the reason for the summary disposition is that the decision below is correct. But if the bar fully understands that `dismissed for want of a substantial federal question' in a state court appeal is the equivalent of affirmance on the merits insofar as the federal questions under 28 U. S. C., § 1257 (1) and (2) are concerned, and is not limited to a determination *539 of whether there is such a federal question, the difference in nomenclature does no harm.
"The historical difference in the wording of the Court's orders in state and federal court appeals reflects a distinction made in the Rules as to the kind of motion an appellee should file. As stated in Rule 16 (1) (b), the Court will receive from an appellee `a motion to dismiss an appeal from a state court on the ground that it does not present a substantial federal question.' And Rule 16 (1) (c) makes appropriate the filing of `a motion to affirm the judgment sought to be reviewed on appeal from a federal court on the ground that it is manifest that the questions on which the decision of the cause depends are so unsubstantial as not to need further argument'" (emphasis added).
It thus appears that having had a final determination on the merits of the issues raised in this action, claimant is estopped from again litigating them.
Assuming, however, that the Supreme Court's dismissal is not res judicata as to these issues, we are of the opinion that claimant's arguments are without merit. In Matter of Sarisohn (21 N Y 2d 36, 48) the identical issues were raised and we unanimously held that: "These are contentions that go to the traditional nature of removal proceedings and at this late date do not merit discussion."
The fact that the term "for cause" is not defined by the constitutional provision authorizing the removal of a Judge does not render it void for vagueness. As Judge BARTELS said in Sarisohn v. Appellate Div., Second Dept., S. Ct. of St. of N. Y. (265 F.Supp. 455, 458): "The words `for cause' mean for a cause to be enumerated and specified in each particular instance so that the defendant may be duly notified and adequately prepared to defend the charges. It does not mean that a judge may be removed for `cause' without more and without an enumeration of the charges constituting the alleged `cause'. It would be impossible to enumerate in any statute all the possible grounds and circumstances justifying the removal of a judicial officer. Guidelines may be found in the Canons of Ethics, applicable to both attorneys and judges, adopted by the American Bar Association and other bar associations, and also in the general moral and ethical standards expected of judicial officers by the community. *540 `For cause' has been defined in several cases involving the removal of judicial officers and they provide a reasonable person with a competent definition of this phrase."
Thus in Matter of Kane v. Rudich (256 App. Div. 586-587) it was noted that the term "cause" has been defined "as including corruption, general neglect of duty, delinquency affecting general character and fitness for office, acts violative of law inspired by interest, oppressive and arbitrary conduct, reckless disregard of litigants' rights, and acts justifying `the finding that his future retention of office is inconsistent with the fair and proper administration of justice.' (Matter of Droege, 129 App. Div. 866, 882; 197 N.Y. 44, 52; Matter of Brooklyn Bar Association [Hirshfield], 229 App. Div. 654; Matter of Barlow, 141 id. 640.)"
It must be remembered that the power of removal is designed to insure efficiency and fidelity in the discharge of official duty. The office of a Judge is so delicate that it is difficult, if not impossible, to enumerate and define, with legal precision, the conduct for which a Judge ought to be removed (cf. Ex Parte Secombe, 19 How. [60 U. S.] 9, 14 [dealing with disbarment of an attorney]).
Thus it is widely recognized that "the degree of incompetency or malconduct which amounts to sufficient cause for removal must of necessity, within certain established limits, rest somewhat in the sound discretion in the officer [or body] in whom the power of removal is vested" (Matter of Sausbier v. Wheeler, 252 App. Div. 267, 270; Farish v. Young, 18 Ariz. 298; 4 McQuillin, Municipal Corporations, § 12.234, and cases cited therein). Although the body which exercises the power of removal is vested with broad discretion where the term "cause" is not defined, it is manifest that the power cannot be exercised arbitrarily. The phrase "for cause" clearly means "legal cause"  some cause affecting or concerning the ability or fitness of the incumbent to perform the duty imposed upon him (People ex rel. Munday v. Fire Comrs., 72 N.Y. 445, 449).
Cause and similarly broad standards have been upheld against the charge of vagueness or used in numerous statutes, to justify removal from office or denial of license privileges.
Thus in Lehmann v. Board of Accountancy (263 U. S. 394) a State Board of Public Accountancy was authorized by statute *541 to cancel the certificates of public accountants "for any unprofessional conduct of the holder of such certificate, or for other sufficient cause" upon written notice of 20 days and a hearing thereon. Appellant was brought up on charges and sought to enjoin the board from acting, urging, inter alia, that the statute is in conflict with the Constitution of the United States because it purports to authorize the revocation of a certificate without defining or determining in advance what grounds or facts or acts shall be sufficient cause for such revocation. In rejecting this contention, the Supreme Court said (p. 398): "Such absence permits, it is asserted, arbitrary action. We cannot yield to that assertion or assume that the Board will be impelled to action by other than a sense of duty or render judgment except upon convincing evidence introduced in a regular way with opportunity of rebuttal. We certainly cannot restrain the Board upon the possibility of contrary action. Official bodies would be of no use as instruments of government if they could be prevented from action by the supposition of wrongful action."
In Board of Educ. of City of Los Angeles v. Swan (41 Cal. 2d 546) the Supreme Court of California held that a statute authorizing the removal of a teacher for unprofessional conduct was not void for vagueness because it would be impossible to enumerate in any legislative enactment those things for which a teacher might prove unworthy of the calling.
The "for cause" standard contained in section 22 (formerly § 9-a) of article VI is no more vague than standards of "misconduct", "maladministration", "malfeasance" and "malversation" in office or willful and corrupt conduct in office which are traditionally found in statutes authorizing the removal of public officers (see, e.g., Public Officers Law, §§ 32, 36). Nor is the standard any more vague than the standard of "good behavior" with respect to Federal Judges contained in section 1 of article III of the United States Constitution.
In sum we find claimant's contention to be as wanting in substance as the United States Supreme Court did when it dismissed the claimant's appeal from the determination of the Court on the Judiciary "for want of a substantial federal question".
Claimant's contention that the functions of complainant, prosecutor and Judge were combined in the Court on the Judiciary *542 in violation of his constitutional rights is also without merit. Primary reliance is placed on Matter of Murchison (349 U. S. 133, supra) a criminal contempt case that is clearly distinguishable from the removal proceeding in the Court on the Judiciary. The petitioners in the Murchison case were called before a Michigan State Judge, who served as a "one-man grand jury" under Michigan law in investigating crime. Convinced that petitioner Murchison had committed perjury and because petitioner White had refused to answer numerous questions on the ground that he was entitled to have counsel with him, the Judge charged each of them with criminal contempt. The Judge who had been the "grand jury" then tried both petitioners in open court, convicted and sentenced them for criminal contempt. In holding that it was a violation of due process for the "judge-grand jury" to try these petitioners, the Supreme Court said (pp. 136, 137):
"A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that `every procedure which would offer a possible temptation to the average man as a judge * * * not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law.' Tumey v. Ohio, 273 U. S. 510, 532 * * *
"It would be very strange if our system of law permitted a judge to act as a grand jury and then try the very persons accused as a result of his investigations * * * Having been a part of that process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused. While he would not likely have all the zeal of a prosecutor, it can certainly not be said that he would have none of that zeal. Fair trials are too important a part of our free society to let prosecuting judges be trial judges of the charges they prefer."
*543 This language, although broad and seemingly all encompassing, must nevertheless be viewed in the context of the entire case. Thus the Supreme Court pointed out the Judge's recollection of what occurred during his "grand jury" secret session is likely to weigh more heavily with him than any testimony given in the open contempt trial. Indeed, the court observed that this "judge whom due process requires to be impartial in weighing the evidence presented before him, called on his own personal knowledge and impression of what had occurred in the grand jury room and his judgment was based in part on this impression, the accuracy of which could not be tested by adequate cross-examination." (349 U. S., supra, at p. 138; emphasis added.)
Since the "one-man grand jury" proceeding had taken place in the secret chambers of the Judge, there were no public witnesses whom petitioners could call upon to give disinterested testimony concerning what had occurred. Finally the court noted that, if the Judge became a material witness in the contempt trial over which he was presiding, "the result would be either that the defendant must be deprived of examining or cross-examining him or else there would be the spectacle of the trial judge presenting testimony upon which he must finally pass in determining the guilt or innocence of the defendant. In either event the State would have the benefit of the judge's personal knowledge while the accused would be denied an effective opportunity to cross-examine. The right of a defendant to examine and cross-examine witnesses is too essential to a fair trial to have that right jeopardized in such way" (p. 139).
The proceedings in the Court on the Judiciary are a far cry from the Murchison case, where the Trial Judge not only pressed the charges, acted as a witness and could fairly be likened to a party, but the right of cross-examination  a fundamental right, the deprivation of which is error of the first magnitude (Smith v. Illinois, 390 U. S. 129, 131)  was virtually nonexistent.
There is simply no basis for holding that the procedure followed by the Court on the Judiciary deprived claimant of a fair trial in a fair and impartial tribunal. Here the Court on the Judiciary was not the accuser, for it was the report of the Supreme Court Justice which served as the complaint. Nor can *544 it be said that the Court on the Judiciary had an interest in the outcome of the case because it reviewed the allegations in the complaint in order to ascertain, as any court would on a demurrer or motion, whether basis existed for preferral of charges. In other words, far from prejudging the facts, the Court on the Judiciary merely determined, as a matter of law, that the report contained facts sufficient to constitute ground for the preferral of charges. The final charges were preferred by counsel designated by the court, but it cannot be assumed that, because the court designated the attorneys to conduct the proceeding, the court became so intimately involved with the case as to deprive claimant of an impartial tribunal. If this were the law, the People would have cause to object in every criminal case in which a Trial Judge assigns counsel for an indigent defendant and presides at the trial.
The Court on the Judiciary is a court of record (Judiciary Law, § 2) whose jurisdiction is strictly limited to removing or retiring a Judge or Justice and disqualifying a Judge or Justice removed from again holding any public office in this State (N. Y. Const., art. VI, § 22). To this extent the Court on the Judiciary sits to supervise the conduct of the members of the Judiciary of this State, and like an administrative agency which may remove an employee for cause, where a combination of functions is traditional, so too that combination of functions may, consonant with due process, exist in the Court on the Judiciary.
Accordingly, for the reasons stated in this opinion, the order appealed from should be reversed and the order and judgment of the Court of Claims dismissing the complaint reinstated.
BURKE, J. (dissenting).
I concur completely in answering the first two certified questions in the affirmative. I must dissent, however, from the conclusion that the third certified question should be answered in the negative.
It is far too late to assert that the "traditional" nature of removal proceedings can insulate them from the mandates of the Constitution (see, e.g., Matter of Ruffalo, 390 U. S. 544; Spevack v. Klein, 385 U. S. 511). One of these constitutional mandates is that no man, not even a Judge, can be deprived of his liberty or property without due process of law. And due process requires, in turn, that "penal" provisions, in the broadest *545 sense (Matter of Ruffalo, supra; Peters v. Hobby, 349 U. S. 331; Powell v. Zuckert, 366 F.2d 634, 640), be so drawn as to give fair warning as to the conduct sought to be proscribed and as to which a penalty may be imposed. It is clear that "Vague laws in any area suffer a constitutional infirmity" (Ashton v. Kentucky, 384 U. S. 195, 200) and that "a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it * * * leaves judges and juries free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." (Giaccio v. Pennsylvania, 382 U. S. 399, 402-403.) It is also abundantly clear that a particular provision, when challenged for vagueness, is to be tested on its own terms and that it cannot be cured of its fatal vagueness by means of clear and detailed specification of the charges sought to be prosecuted under it since the vice of a vague provision lies precisely in its failure to give fair warning before it is sought to be invoked. "If on its face the challenged provision is repugnant to the due process clause, specification of details of the offense intended to be charged would not serve to validate it * * * It is the statute, not the accusation under it, that prescribes the rule to govern conduct and warns against transgression". (Lanzetta v. New Jersey, 306 U. S. 451, 453; emphasis added.) Thus, to rely, as the majority does, on the opinion in Sarisohn v. Appellate Div., Second Dept., S. Ct. of St. of N. Y. (265 F.Supp. 455, 458) which states that "for cause" means for cause to be specified in each particular instance, is to ignore the very nature and purpose of the vagueness principle. Such a position essentially confuses the requirement of notice sufficient to enable the party charged to prepare his defense (see Matter of Ruffalo, 390 U. S. 544, supra) with the separate and distinct requirement that the provision under which the charges are sought to be brought be sufficiently clear and precise as to give fair warning that particular conduct may result in the bringing of charges. (See People v. Firth, 3 N Y 2d 472.) Were the position relied upon by the majority to be adopted there would be no need to formulate a concept of vagueness since, in any case, the prosecuting authority could avoid any such challenge by minutely drawn and carefully precise charges. Suffice it to say that that proposition is not the law.
*546 The majority's reliance on Lehmann v. Board of Accountancy (263 U. S. 394) is similarly misplaced since it takes no account of the later case of Barsky v. Board of Regents (347 U. S. 442) in which the United States Supreme Court dealt with a vagueness challenge to section 6514 (subd. 2) of the Education Law under which the license of a physician can be revoked, suspended or annulled on the ground that the physician has been convicted of a crime in a court of competent jurisdiction. In upholding that provision, the court specifically stated the applicable criteria for resolution of the vagueness challenge: "As interpreted by the New York courts, the provision is extremely broad in that it includes convictions for any crime in any court of competent jurisdiction within or without New York State. This may be stringent and harsh but it is not vague. The professional standard is clear. The discretion left to enforcing officers is not one of defining the offense. It is merely that of matching the measure of discipline to the specific case." (347 U. S., at p. 448; emphasis added.) By its clear implication, the opinion in Barsky indicates that, where the discretion of the enforcing officers is that of defining the offense, then the provision is unconstitutionally vague. The professional standard for an elected Justice of the Supreme Court is anything but clear and the discretion left to the Court on the Judiciary by the removal provision is precisely that of defining "for cause" on an ad hoc basis and after the fact of the conduct sought to be penalized; its discretion is indisputably not that of merely "matching the measure of discipline to the specific case." The Court on the Judiciary has itself recognized that this is the case:
"Removal of any public officer, especially one elected by the voters, is an extreme penalty. Under all the circumstances, we have decided that the charges, grave as they are, do not call for removal. In so deciding, we are not holding that improper or injudicious statements by a Judge in or out of court cannot justify removal from office. Each case must be decided on its own merits and this court will exercise its careful discretion in each instance." (Matter of Sobel and Liebowitz, 8 N Y 2d [a], [j]; emphasis added.)
"`Cause' is an inclusive, not a narrowly limited term. Such `cause' may be directly associated with a Judge's work as a Judge but is not limited to such matters * * * `Cause' for *547 removal of a Judge may be found not only in official misconduct but in his taking attitudes and positions which show unfitness for the office and unworthiness of the trust." (Matter of Osterman, 13 N Y 2d [a], [p]-[q].)
Moreover, it is undisputed that "`[n]either the Constitution nor the statutes have attempted to define what that "cause" shall be.'" (Matter of Sarisohn, 21 N Y 2d 36, 41, citing Matter of Droege, 197 N.Y. 44, 51.) Reliance is placed, however, on a number of cases (opn., pp. 539-540) which have, in fact, merely compounded the vagueness of the term "cause" by attempting to describe it in terms of equally, if not even more, vague language. The result is, nevertheless, the same: the "standard" is unconstitutionally vague in its failure to provide fair warning, in advance, as to what conduct constitutes cause for removal.
In addition, unlike the cases relied upon by the majority which deal with other public officials, there is no provision in the Constitution or statutes of this State under which an appeal can be taken from an order of removal by the Court on the Judiciary. (Matter of Friedman, 19 A D 2d 120.) Although it is clear that there is no constitutional right to an appeal, it is precisely this lack of any review of the determinations of the Court on the Judiciary which does make it clear that the power of removal can be exercised arbitrarily. The vagueness of the provision under which removal can be effected is by itself sufficient to indicate that its application is a denial of due process. But, when the lack of any review of the removal order is added to the vagueness of the removal provision, the deprivation of due process is overwhelming. Furthermore, the fact that there are other, equally vague and, again, "traditional" standards for the removal of other public officers is no answer to the fact that the standard before the court in this case is unquestionably so vague as to require the conclusion that its application to the claimant to accomplish his removal from office deprived him of due process. Although I would agree that the "power of removal is designed to insure efficiency and fidelity in the discharge of official duty", it must be pointed out that "efficiency and fidelity" may not constitutionally be achieved at the price of a citizen's constitutional rights. The *548 difficulty, if not impossibility, which purportedly exists in devising a more precise standard can have no controlling effect on the disposition of the question of the constitutionality of the present standard, for it is clear that the entire Bill of Rights and the amendments to the Constitution inevitably make it more difficult for government to operate in a good many areas. In the area of removal of public officials such as Justices of the Supreme Court, there are additional and compelling reasons why the "difficulties" presented by due process should not be allowed to shunt due process aside in favor of "efficiency": "I need not dilate upon how critically the judicial arm of our great governing triumvirate might be weakened if Judges, of all persons, were deprived of the pattern of protection afforded by the due process, privileges and immunity clauses of the Federal Constitution, and which are so reassuring and fortifying to other citizens." (Matter of Osterman, supra, 13 N Y 2d [a], [q] [per BOTEIN, J.].)
In addition to his contention as to the vagueness of the removal provision, claimant contends that the Court on the Judiciary so combined the disparate functions of Grand Jury, prosecutor, Judge and jury that he was denied a fair and impartial trial as required by the due process clause. The proceedings in the Court on the Judiciary followed an investigation involving disciplinary action against claimant's brother, an attorney. The court, on the basis of information received from the Appellate Division, preliminarily determined that the "complaint" stated facts sufficient to constitute cause for the preferral of charges. The court then directed that the charges be drawn and served on the claimant. It also appointed two attorneys to prosecute the charges and, in a document in the record, referred to these attorneys as "our attorneys" and to the charges as "our charges."[*] The court then heard the evidence, ordered the claimant's removal and, without convening as a court, denied claimant's motion to vacate the order of removal. A fair trial in a fair tribunal is, of course, fundamental to due process. In this regard, it is important to recognize that, in considering *549 the concept of a "fair trial", "our system of law has always endeavored to prevent even the probability of unfairness" and has not limited itself to preventing "actual bias in the trial of cases." (Matter of Murchison, 349 U. S. 133, 136; Offutt v. United States, 348 U. S. 11, 14.) The majority apparently rejects claimant's contentions on this point because the record does not reveal any clear evidence of actual bias. That, however, is not conclusive of the issue since the claimant has shown that the structure and procedure of the Court on the Judiciary inherently involves the probability of unfairness since it necessarily thrusts upon the members of the court the functions of Grand Jury and prosecutor in addition to its main function as trier of the facts. This is so despite the integrity and fairness of the members of the court (Schlesinger Appeal, 404 Pa. 584 [1961]; Mack v. Florida State Bd. of Dentistry, 296 F.Supp. 1259). It seems obvious that an elected Justice of the Supreme Court should be afforded the same structural and procedural safeguards as are available to other citizens. This court would not hesitate, I am sure, to strike down as a denial of due process a provision which would allow a bar association committee which investigates charges of professional misconduct against an attorney and which would also allow that same committee to prosecute and try those charges and impose discipline, just as the Pennsylvania Supreme Court did in Schlesinger Appeal, supra. In the face of the protection afforded to the attorney from such a procedure, can the approval of a procedure which denies the elected Justice that same protection be justified? The majority concludes that it can be, "consonant with due process", and with that conclusion I cannot agree and, therefore, I would affirm the order of the Appellate Division and remit the matter with directions to enter judgment for the claimant.
Order reversed, without costs, and the case remitted to the Court of Claims for further proceedings in accordance with the opinion herein. Certified questions (1) and (2) answered in the affirmative and certified question (3) answered in the negative.
NOTES
[1] The Presiding Justice of the Appellate Division, at whose request the Court on the Judiciary was convened, did not sit as a member of that court in connection with claimant's removal proceeding.
[2] We note that the State's reliance on Austin v. Board of Higher Educ. (5 N Y 2d 430), for the proposition that claimant cannot recover on his claim for salary unless he is first reinstated in the office for which he seeks salary, is misplaced. Austin is not applicable to the facts of this case. In Austin the removal of the officeholder was accomplished by a legally organized body with jurisdiction to enter a removal order in a proper case. Here claimant argues that the court which removed him was never legally organized and, therefore, he was never legally removed and does not have to be reinstated.
[*] I would merely note in passing that the majority's parallel to a Judge assigning counsel to represent an indigent defendant is less than accurate. The parallel would be complete if that Judge, at the time he assigned counsel, also dictated what defenses or contentions counsel was to raise in behalf of the defendant.